Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---------------------------------
IN RE:                              )   CASE NO.        02-33699 (LMW)
                                    )
  NEW ENGLAND NATIONAL, LLC,        )   CHAPTER         11
                                    )
              DEBTOR.               )
---------------------------------
  NEW ENGLAND NATIONAL, LLC,        )   ADV. PRO. NO.   11-3058
                                    )
              PLAINTIFF             )   ECF NOS.        10, 19
                                    )
       vs.                          )
                                    **)**
  TOWN OF EAST LYME,                )
                                    )
              DEFENDANT.            )
---------------------------------

## APPEARANCES

| | |
|---|---|
| Mark E. Block, Esq. | Attorney for Movant/Defendant |
| Amanda L. Sisley, Esq. | |
| Block, Janney & Pascal, LLC | |
| 138 Main Street | |
| P.O. Box 310 | |
| Norwich, CT 06360 | |
| | |
| William S. Gannon, Esq. | Attorney for Plaintiff |
| William S. Gannon, PLLC | |
| 889 Elm Street, 4th Floor | |
| Manchester, NH 03101 | |

## MEMORANDUM AND ORDER
### RE: SUBMISSION OF PROPOSED FINDINGS OF MATERIAL FACT

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

The matters before the court in this adversary proceeding are (a) that certain Defendant's Motion To Dismiss or for Abstention (ECF No. 10, together with supporting memorandum of law, the "Dismiss/Abstain Motion")[1] filed by the above-referenced defendant (the "Town") and (b) the above-referenced debtor's (the "Debtor") objection thereto (ECF No. 19, together with supporting memorandum of law, the "Objection").  For the reasons discussed more fully below, the court has determined that it would be of substantial benefit to the court for the parties each to submit to the court proposed findings of material fact (but not proposed conclusions of law) with respect to these matters.  The purpose of the "memorandum" portion of this Memorandum and Order is to clarify the law for the parties (to the extent appropriate at this time) in order to enable them to focus their respective "proposed findings" to be of the greatest assistance to the court.

I.      **PROCEDURAL BACKGROUND**[2]

    A.      **The Case**

The Debtor commenced the above-referenced chapter 11 case by the filing of a voluntary petition on August 1, 2002.  The Debtor's Third Amended Plan of Reorganization (Case ECF No. 259, the "Plan") was confirmed by order dated August 28, 2006.  (*See* Case ECF No. 277.)  An application for entry for final decree (*see* Case ECF No. 324, the "Final Decree Application") was filed by the Debtor on April 12, 2007 but was "marked off with right to reclaim [to the hearing calendar]" by the Debtor on June 18, 2008.  (*See* Case Docket entry for June 18, 2008.)  As of the

---

[1] References to the docket of this adversary proceeding appear in the following form: "ECF No. __."  References to the docket of the above-referenced chapter 11 case appear in the following form: "Case ECF No. __."

[2] This section is limited to the facts that are necessary to place these matters into context for present purposes only.

date hereof, the Final Decree Application has not been reclaimed to the hearing calendar, no other similar application has been filed and no final decree has been issued in this case.

On December 1, 2008, the Debtor and the Town jointly filed that certain Debtor and East Lyme Joint Motion for Order Approving Partial Compromise (Case ECF No. 472, the "Joint Motion"). The Compromise Agreement that is the subject of the Joint Motion appears in the record as Case ECF No. 476 (the "Compromise Agreement"). That certain Order Approving Compromise and Settlement was issued on December 4, 2008. (*See* Case ECF No. 478.)

### B.    The Town's Proof of Claim/the Contested Matter

The Debtor listed a "dispute[d]" tax lien held by the Town in the amount of $360,000.00 on its Schedule D - Creditors Holding Secured Claims filed with its petition on August 1, 2002. (*See* Case ECF No. 1 (Schedule D).) On January 23, 2003, the Town of East Lyme Tax Collector filed a proof of claim against the chapter 11 estate in the amount of $417,594.75 ("POC No. 9-1"). On August 11, 2003, the Town filed an amended proof of claim against the estate in the amount of $440,984.47 ("POC No. 13").[3] On April 12, 2007, the Debtor filed a certain Debtor's Motion for Determination of Debtor's Tax Liability to the Town of East Lyme, Connecticut Pursuant to 11 U.S.C. § 505 or in the Alternative, Debtor's Objection to Claim No. 13 filed by the Town of East Lyme (Case ECF No. 325, the "Contested Matter"). On December 18, 2007, the Debtor filed an objection to POC No. 13 (Case ECF No. 347, the "Claim Objection"). The Claim Objection challenged the propriety of the tax assessment itself and other elements of the Town's tax claim and also alleged that the Town's tax claim was subject to offset on several grounds not related to the tax

---

[3]    Amended POC No. 9-1 originally was filed as POC No. 13. However, the amended proof of claim now appears in the Claims Register as POC No. 9-2.

assessment process. (*See id.*) On July 31, 2008, the Debtor filed a certain Debtor's Motion To Amend Motion for Determination of Debtor's Tax Liability to East Lyme or Objection to Claim 13 filed by the Town of East Lyme (Case ECF No. 438, the "Motion To Amend"). The Motion to Amend contained what counsel for the Debtor referred to as an "outline" of offset claims by the Debtor against the Town.

On March 10, 2009, the court issued an order which provided in relevant part as follows: "Pursuant to the terms of Paragraph 7 of the approved Compromise Agreement between East Lyme and the Debtor, the . . . [Motion To Amend] shall be, and hereby is granted . . . ." (Case ECF No. 509.) On March 31, 2009, the court issued a consensual order in respect of the Claim Objection which order provided in relevant part as follows:

> Without prejudice to the Debtor's right to continue the . . . Contested Matter . . . as a contested matter or adversary proceeding in accordance with the Compromise Agreement between the parties as approved by Order of the Court dated December 4, 2008, the Debtor's objection [to POC No. 13] is sustained in part subject to the terms and conditions of such agreement and the order that approved the Compromise Agreement.

(Case ECF No. 515.)

On July 28, 2011, the Debtor filed a certain Motion for Entry of Scheduling Order for Debtor's Amended Objection to the Proof of Claim (#13) of the Town of East Lyme Pursuant to this Court's Order dated March 30, 2009 (Case ECF No. 618, the "Motion for Scheduling Order"). On August 16, 2011, the Town filed an Objection to the Motion for Scheduling Oder (Case ECF No. 632, the "Scheduling Order Objection"). The Motion for Scheduling Order and the Scheduling Order Objection first came on for a hearing on August 17, 2011. At that hearing (the "First Hearing"), the court directed the parties to submit further briefs discussing (among other things)

issues in respect of *Stern v. Marshall,* 131 S. Ct. 2594 (2011). The parties complied. (*See* Case ECF Nos. 643 (Debtor's brief), 644 (Town's brief), 646 (Debtor's Reply Brief).) At the conclusion of the First Hearing, the hearing on the Motion for Scheduling Order and the Scheduling Order Objection was continued to September 26, 2011. From the arguments and pleadings of the parties, it appeared to the court that the Town argued (among other things) that the Contested Matter should be dismissed for reasons including the effect of the Compromise Agreement and/or Rule 19(b) of the Federal Rules of Civil Procedure. The parties (and the court) also appeared to agree that there also might be some "*Stern* problem." The court concluded (and the parties appeared to agree) that the foregoing issues should not be adjudicated in the context of the purely procedural Motion for Scheduling Order. Accordingly, on October 4, 2011, the court issued an order (Case ECF No. 647) which (among other things) directed the Debtor on or before October 24, 2011 to "commence an adversary proceeding in this court . . . by filing a complaint . . . naming the Town as defendant and setting forth the claims "outlined" in the Motion To Amend . . . ," (Case ECF No. 647 at 4). As discussed below, the Debtor complied with that order by commencing this adversary proceeding on October 24, 2011.

    **C.**    **This Adversary Proceeding**

The Debtor commenced this adversary proceeding against the Town by complaint (ECF No. 1, the "Complaint") filed on October 24, 2011.[4] The Complaint did not seek a tax refund from the Town (the court assumes, but does not decide, that the foregoing was a consequence of the Compromise Agreement) but (in some form) asserted the above-referenced "setoffs." (*See id.*) That

---

[4] A prior adversary proceeding by the Debtor against the Town (A.P. # 10-3033, the "Prior Proceeding") was commenced by the Debtor by the filing of a complaint on May 13, 2010. A similar but separate memorandum and order will issue in those proceedings.

- 5 -

certain Joint Pretrial Order issued on November 18, 2011 provided (among other things) that "no [t]rial will be set until [motions to dismiss on jurisdictional grounds, motions to abstain, motions for revocation of the reference and the like] . . . are adjudicated," (ECF No. 8 at 1, the "Joint Pretrial Order"). In accordance with the Joint Pretrial Order, the Town filed the Dismiss/Abstain Motion on January 30, 2012. (*See* ECF No. 10.)[5] In relevant part, the Dismiss/Abstain Motion (among other things) (a) challenges this court's power to enter a final order under the authority of *Stern, supra*, (b) challenges this court's subject matter jurisdiction under 28 U.S.C. § 1334(b) and (c) seeks "permissive" abstention pursuant to 28 U.S.C. § 1334(c)(1). (*See* ECF No. 10, *supra* (Memorandum of Law).) Ordinarily, this court has a duty to confirm its subject matter jurisdiction before proceeding any further. *See In re Cody, Inc.,* 281 B.R. 182, 189 (S.D.N.Y. 2002), *aff'd in part, appeal dismissed in part,* 338 F.3d 89 (2d Cir. 2003) (determining that bankruptcy court should have determined the existence of subject matter jurisdiction before deciding to abstain). *Cf. Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998) (finding that court should determine jurisdiction before proceeding to the merits). Accordingly, the issue of permissive abstention (and, as explained below, the *Stern* issue) are beyond the scope of this Memorandum and Order and are reserved for later treatment.

The Debtor filed the Objection on February 23, 2012 and (in its supporting memorandum) incorporated related pleadings filed in the Prior Proceeding and also noted that "the parties [have] agreed that this Court could consider the Transcript of the hearing [in the Prior Proceeding] held

---

[5] Also in accordance with the Joint Pretrial Order, on the same day the Town filed a motion for the District Court to withdraw the reference from this court under 28 U.S.C. § 157 with respect to this adversary proceeding. (*See* ECF No. 11.) That motion now is pending before the District Court.

November 9 and 10, 2011." (*See* ECF No. 19 at 1 n.2 (Memorandum of Law).) Oral argument was held on these matters on April 12, 2012. At that oral argument, counsel for the Town stated that "the arguments that we've made in the . . . [Prior Proceeding], the exhibits and the briefs are incorporated here." (ECF No. 38 at 9:2-4.) Neither party has provided the court with a statement of facts *per se* either in the Prior Proceeding or in this proceeding.

## II.   LEGAL BACKGROUND

### A.   In General

"The [Supreme Court's] holding in *Stern* [*, supra*] did not concern the subject matter jurisdiction of the bankruptcy court, but rather, the allocation of the authority as between the district court and the bankruptcy court to enter final judgments." *Empire State Bldg. Co. LLC v. New York Skyline, Inc (In re New York Skyline, Inc.),* 471 B.R. 69, 79 (Bankr. S.D.N.Y. 2012). "That allocation does not implicate questions of subject matter jurisdiction." *Id.* (citation and internal quotation marks omitted). With respect to issues of subject matter jurisdiction, the burden is on the plaintiff to prove such jurisdiction by a preponderance of the evidence. *See Vanguard Prod. Corp. v. Citrin (In re Indicon, Inc.),* No. 11-5133, 2012 WL 1110115, at *2 (Bankr. D. Conn. Mar. 30, 2012 (Shiff, J.).

Section 157(a) of title 28 of the United States Code governs certain "[p]rocedures" which govern the allocation of bankruptcy work between the district courts and the bankruptcy courts and provides as follows:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.[6]

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to–

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

---

[6] The District Court for this District has made that reference pursuant to a certain Order dated September 21, 1984 (Daly, C.J.) which referred to the "Bankruptcy Judges for this District *inter alia,* all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . ."

>    (M) orders approving the use or lease of property, including the use of cash collateral;
>
>    (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
>
>    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
>
>    (P) recognition of foreign proceedings and other matters under chapter 15 of title 11 . . . .

28 U.S.C.A. § 157 (West 2012). Because a district court cannot refer a proceeding over which it has no jurisdiction, Section 157 *a priori* assumes that the district court has such jurisdiction.

The bankruptcy jurisdiction of the district courts is a creature of Section 1334 of title 28 of the United States Code which provides (in relevant part) as follows:

>    (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
>    (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11 . . . .

28 U.S.C.A. § 1334 (West 2012).

As discussed above, *Stern* does not implicate the District Court's subject matter jurisdiction here. Accordingly, it is appropriate for the court first to consider its subject matter jurisdiction (which, as explained above, derives from that of the District Court). Only after confirming the existence of that jurisdiction should this court proceed to the *Stern* and abstention issues (both of which issues are reserved as discussed above). That approach is followed below.

### B. Subject Matter Jurisdiction Under Section 1334

#### 1. Preconfirmation Jurisdiction

Section 1334(b) provides for three types of district court jurisdiction over bankruptcy proceedings: "arising under" jurisdiction; "arising in" jurisdiction; and "related to" jurisdiction. *See* 28 U.S.C. § 1334(b). "Arising under" jurisdiction exists when the proceeding invokes a substantive right created by federal bankruptcy law. *See, e.g., Browning v. Levy,* 283 F.3d 761, 773 (6th Cir. 2002). "A claim 'arises in' bankruptcy if, by its very nature, the claim can only be brought in a bankruptcy action, because it has no existence outside of bankruptcy." *Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.),* 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003). "Jurisdiction under 28 U.S.C. § 1334(b)'s 'related to' prong rests where the proceeding's outcome 'could conceivably have any effect on the estate being administered in bankruptcy.'" *Russian Media Group, LLC v. Echostar Commc'ns Corp.,* No. 3:03-CV-1263 (WWE), 2009 WL 4036849, at *4 (D. Conn. Nov. 19, 2009) (citation omitted).[7]

#### 2. Postconfirmation Jurisdiction

For postconfirmation jurisdiction to exist with respect to a proceeding, first, the confirmed plan must provide that the bankruptcy court will retain jurisdiction over the proceeding postconfirmation and second, the proceeding otherwise must fall within the ambit of the court's

---

[7] "[C]ore proceedings are those proceedings that arise in a bankruptcy case/or [arise] under Title 11 [within the purview of Section 1334(b)]." *Stern,* 131 S. Ct. at 2604. A matter that neither arises under title 11 nor arises in a title 11 case but is merely "related to" the title 11 case within the purview of Section 1334(b) is a non-core proceeding. *See* 28 U.S.C. § 157(b)(3).

Section 1334 jurisdiction.[8] *See In re Metro-Goldwyn-Mayer Studios Inc.,* 459 B.R. 550, 556 (Bankr. S.D.N.Y. 2011). It is undisputed that the Plan contains an adequate retention of jurisdiction provision. Accordingly, the issue is whether there is subject matter jurisdiction here under Section 1334.

"[M]ost courts agree that once confirmation occurs, the bankruptcy court's jurisdiction [under Section 1334] shrinks." *Park Ave. Radiologists, P.C. v. Melnick (In re Park Ave. Radiologists, P.C.),* 450 B.R. 461, 467 (Bankr. S.D.N.Y. 2011) (citation and internal quotation marks omitted). "A party can invoke the authority of the bankruptcy court to exercise post confirmation jurisdiction if the matter has a close nexus to the bankruptcy plan." *Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.),* 448 Fed. Appx. 134, 137 (2d Cir. Nov. 29, 2011), *cert. denied*, 2012 WL 2368700 (U.S. June 25, 2012) (summary order). *See also Metro-Goldwyn-Mayer, supra* at 556 ("The 'close nexus' test is met when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan . . . ." (citation and internal quotation marks omitted)).

There appears to be a disagreement between (or possibly among) the Courts of Appeal in that at least one circuit limits the "close nexus" requirement to non-core proceedings. *See Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.),* 505 F.3d 237, 260 (3d Cir. 2007) ("[T]he 'close nexus' standard only applies for the purposes of determining whether a federal court has jurisdiction over a non-core 'related to' proceeding in the post-confirmation context."). The Third Circuit adopted that approach as a matter of judicial efficiency and because that was the approach taken by

---

[8] The reason why the "effect on the estate" test usually is inappropriate for postconfirmation proceedings is explained in *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l., Inc.)*, 372 F.3d 154, 164-67 (3d Cir. 2004).

the courts below. *See id.* at 257 n.18 ("We . . . find . . . [applying the close-nexus test] inefficient in situations like the one before us because a finding that the case [is core because it] 'aris[es] in bankruptcy' would 'kill two birds with one stone' inasmuch as such a finding conclusively would establish both subject matter jurisdiction and the bankruptcy court's authority to enter final orders."). On the other hand, the Second Circuit has applied the "close nexus" requirement to both core and non-core proceedings. *See DPH Holdings,* 448 Fed. Appx. at 136-37 (After determining that the matter was core, the court applied the "close nexus" test to find postconfirmation jurisdiction.). *See also In re DPH Holdings Corp.,* 437 B.R. 88, 97 (S.D.N.Y. 2010) (court below also applying "close nexus" test).

The court is aware that the Second Circuit's opinion in *DPH Holdings* is a summary order which does "not have precedential effect," (Second Circuit Local Rule 32.1.1(a)). However, because that opinion is the only Second Circuit opinion to address the "close nexus" requirement and is subsequent to the Third Circuit's decision in *Seven Fields,* the court deems following the Second Circuit's opinion in *DPH Holdings* to be the wiser course.

Determining whether the "close nexus" test has been satisfied is a fact sensitive endeavor. *See, e.g., Equipment Finders Inc. of Tennessee v. Fireman's Fund Ins. Co. (In re Equipment Finders, Inc. of Tennessee),* 473 B.R. 720 (Bankr. M.D. Tenn. 2012); *BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.),* 437 B.R. 160 (Bankr. D. Del. 2010); *In re WRT Energy Corp.,* 402 B.R. 717 (Bankr. W.D. La. 2007); *Kaye v. Dupree (In re Avado Brands, Inc.),* 358 B.R. 868 (Bankr. N.D. Tex. 2006), *appeal denied*, 2007 WL 2241660 (N.D. Tex. Aug. 3, 2007); *Gilbane Bldg. Co. v. Air Sys., Inc. (In re Encompass Servs. Corp.)*, 337 B.R. 864 (Bankr. S.D. Tex. 2006).

Accordingly, bankruptcy courts have identified the following *nonexclusive* factors in determining whether post-confirmation jurisdiction exists . . . :

(1) whether the claim or dispute arose before or after confirmation;

(2) what provisions in the confirmed plan exist for resolving disputes and whether there are provisions in the plan retaining jurisdiction for trying these suits;

(3) whether the plan has been substantially consummated;

(4) the parties involved in the dispute;

(5) whether state law or bankruptcy law applies;

(6) whether the claims require the interpretation of the plan or the court's orders; and

(7) evidence of forum shopping.

*WRT Energy, supra* at 724 (emphasis added) (citations omitted).

### III. <u>CONCLUSION</u>

For the reasons discussed above, in order to determine Section 1334(b) jurisdiction *vel non* over this postconfirmation proceeding, this court will apply the "close nexus" test. Also as discussed above, the "close nexus" analysis is a fact sensitive inquiry. The post-trial briefs of the parties do not contain a separate statement of material facts. The court has determined that such would be helpful to the court. Accordingly, on or before October 2, 2012, each of the parties shall prepare and file with the court proposed findings of material facts (but not proposed conclusions of law) with respect to the "close nexus" test. Each proposed finding shall be supported by a precise citation(s)

to the existing record of this adversary proceeding (*e.g.,* transcripts, exhibits) or to this chapter 11 case.[9]

It is **SO ORDERED.**

Dated: September 11, 2012                                        BY THE COURT

                                                                 Lorraine Murphy Weil
                                                          Chief United States Bankruptcy Judge

---

[9] New evidence is not being solicited hereby. The court may limit its review of the record to the proposed findings of fact filed in accordance herewith or, at its option, may elect to review other parts of the record as well. Because this court has reserved the Town's right to object to Prior Proceeding ECF No. 244 until *after* adjudication of the jurisdictional issues (*see* Prior Proceeding ECF No. 248 at 172:12-20), citations to that document (except as admissions, if otherwise applicable) will not suffice for present purposes.